John R. CARR, Jr., Appellant
(Plaintiff Below)

v.

HOOSIER PHOTO SUPPLIES, INC.,
Eastman Kodak Company, Appellees
(Defendants Below).

No. 2–476A124.

Court of Appeals of Indiana,
Second District.

July 8, 1981.

A. David Meyer, Buschmann, Carr & Meyer, Indianapolis, for appellant.

R. Stanley Lawton, William L. Skees, Jr., W. C. Blanton, Ice, Miller, Donadio & Ryan, Indianapolis, for appellees.

SHIELDS, Judge.

John R. Carr, Jr. appeals from the trial court's judgment awarding him $1013.60 in damages for the loss of four rolls of exposed film. Carr asserts as a matter of law he is entitled to damages of $6040.00. Hoosier Photo Supplies, Inc. (Hoosier Photo) and Eastman Kodak Company (Kodak) cross-appeal from the same judgment, claiming Carr's recovery should be limited to $13.60 (the cost of four rolls of unexposed film).

We affirm.

During the spring or summer of 1970, in preparation for a trip to Europe which he planned to take with his family, Carr purchased ten rolls of 36 exposure Kodak Ektachrome—X 135 film from a retailer who is not a party to this action. Each roll of film had the following notice printed on the package:

"READ THIS NOTICE

"This film will be replaced if defective in manufacture, labeling, or packaging, or if damaged or lost by us or any subsidiary company even though by negligence or other fault. Except for such replacement, the sale, processing, or other handling of this film for any purpose is without other warranty or liability."

Carr did not read this notice but, because of his experience as an amateur photographer and as an attorney, he knew that Kodak film is sold in packages containing a printed limitation of liability. Carr and his family travelled to Europe and spent approximately one month touring France and Spain. During the trip, Carr used nine rolls of the purchased film. Upon returning from the trip, Carr took the nine rolls of exposed film to Hoosier Photo for developing. Carr received receipts from Hoosier Photo for the rolls of film. The receipts contained the following language on the back:

"READ THIS NOTICE

"Although film price does not include processing by Kodak, the return of any film or print to us for processing or any other purpose, will constitute an agreement by you that if any such film or print is damaged or lost by us or any subsidiary company, even though by negligence or other fault, it will be replaced with an equivalent amount of Kodak film and processing and, except for such replacement, the handling of such film or prints by us for any purpose is without other warranty or liability."

Carr did not read this notice, nor was it called to his attention by Hoosier Photo, but again, because of his experience as an amateur photographer and as an attorney, Carr knew that Hoosier Photo, Kodak, and other processors of film gave receipts to their customers containing printed limitation of liability clauses.

Hoosier Photo sent the film to Kodak for developing. Only five of the nine rolls of film were returned to Carr. The other four rolls were lost by either Hoosier Photo or Kodak.

On August 31, 1972, Carr filed suit against Hoosier Photo and Kodak seeking

damages of $10,000. The case was tried on an Agreed Statement. The trial court entered judgment for Carr in the amount of $1013.60 plus interest and costs.

Carr appeals asserting the judgment of the court with respect to the amount of damages awarded is contrary to law and against the weight of the evidence. Hoosier Photo and Kodak cross-appeal asserting the trial court erred in entering judgment in an amount greater than the value of the four rolls of film when the notice on the film box and the receipt given to Carr by Hoosier Photo purported to limit their liability to the cost of the rolls of film. Hoosier Photo and Kodak also allege the trial court erred in entering judgment in an amount greater than the cost of the film when there was no evidence Carr suffered damages caused by Hoosier Photo or Kodak greater than that amount, and that Kodak and Hoosier Photo did not accept bailment of the photographic *images* themselves and can only be liable to the extent of the cost of the film.

## I

■ We first address the issue of whether the Uniform Commercial Code (U.C.C.) applies to this transaction as Kodak and Hoosier Photo urge. We find no reason to apply the U.C.C. to a transaction such as this. Kodak and Hoosier Photo argue Kodak is a third party beneficiary of this contract for the sale of the film to Carr. According to their argument, the sale of the film would fall under the U.C.C. and, since the notice on the film box purports to limit Kodak's liability should the film be returned to Kodak for processing and subsequently lost or damaged, Carr, upon returning the film to Kodak for processing, brought into effect the clause on the film box and thus the U.C.C. applies. We find, however, that the mere addition of a clause relating to film processing to the film box is not sufficient to bring the processing transaction within the scope of the U.C.C.

We also find the contention that the processing transaction should be governed by

the U.C.C. unpersuasive. The relationship created among the parties during this transaction was a bailment rather than a sale and the U.C.C. is not applicable.

The Washington Supreme Court in a situation similar to this held the U.C.C. applicable (*Mieske v. Bartell Drug Company*, [1979] 92 Wash.2d 40, 593 P.2d 1308), but we do not find their reasoning persuasive. We adopt instead the reasoning of the Florida appellate court in *Favors v. Firestone*, (1975) Florida App., 309 So.2d 69. In *Favors* the court held the U.C.C. did not apply to a transaction in which the plaintiffs were changing the tires on a truck owned by the defendants. The court held there was no sale which would invoke the U.C.C. The court reasoned the delivery of the truck for the purpose of having the tire changed created a bailment for mutual benefit which is not similar to a sale and, therefore, there was no reason to apply the U.C.C.

The Indiana case cited by Hoosier Photo and Kodak to support their contention that the U.C.C. is applicable, *McDonald's Chevrolet, Inc. v. Johnson*, (1978) Ind.App., 376 N.E.2d 106, is easily distinguishable from this case. *McDonald* involved the lease of a motor home which the court held satisfied the definition of a purchase. The instant case involves a bailment arising from a service transaction rather than a lease of personal property. We feel there is a distinction between a bailment which arises from the lease of personal property and a bailment which arises from a service transaction. The lease situation is more closely related to a sales transaction and the extension of the U.C.C. to cover leases can be justified.

The lessor of personal property acquires the right to use the personal property for the specified lease term. The personal property has a function intended to be served whether it be a motor home, a U-haul trailer, lawn equipment, sick room supplies, or any of the multitude of items of personal property that are available for rent. During the term of the lease the

lessor is using the personal property as his own and its condition and usefulness are important.

In a bailment for services, the bailee has the personal property but not the use of it. He has the personal property only to perform a service upon it and otherwise its condition is of no import. Thus, we find no need to distort the language of the U.C.C. to extend its coverage to a bailment for service transaction. The rights, remedies, and defenses of bailment law are adequate protection for all parties to the bailment.

## II

The second issue concerns the protection conferred by the two limitation of liability clauses. Clearly neither clause can be construed to protect Hoosier Photo from liability.

■ Hoosier Photo was not a party to the sale of the film and the wording of the clause on the film box cannot be extended to apply to Hoosier Photo. Even Hoosier and Kodak admit there may be "some merit" with respect to the contention that Hoosier Photo is not protected by this clause.

Nor does the wording of the clause on the receipt protect Hoosier. The clause states: "the *return* of any film or print to us for processing or any other purpose . . . ." The word "return" means to "bring, send or put (a person or thing) back to or in a former position" or "to pass back to an earlier possessor." Webster's Third New International Dictionary, (1976 Ed.) p. 1941. The word "return" cannot apply to Hoosier Photo · since it had never previously possessed

the film. Since the clause limits liability only in the event the film is "returned," it cannot limit Hoosier Photo's liability. The trial court was correct when it found Carr did not assent to the application of the clauses to protect Hoosier Photo since a careful reading of the clauses would not inform Carr that they were intended to protect Hoosier Photo.

■ We also find neither clause protects Kodak. The limitation of liability clause on the film box does not apply to the processing transaction because processing was an entirely separate transaction. The price paid for the film included only the film and this limitation of liability clause should apply only to defects in the film itself. Despite wording of the clause which purports to apply to the processing transaction, we find any agreement concerning liability for losses during the processing transaction would have to be made when the arrangements for processing were made.

■ The limitation of liability clause on the receipt does apply to the processing transaction. However, due to the ambiguities in the wording of the clause, we find it does not protect Kodak in this case. Limitation of liability clauses which limit the liability of a party for his own negligence are valid in Indiana as long as both parties willingly assent to the clause. *General Grain, Inc. v. International Harvester*, (1968) 142 Ind.App. 12, 232 N.E.2d 616.[1] However, these clauses are not favorites of the law and they are strictly construed. To be effective, the clauses must be unambiguous so that both parties know exactly what is meant.[2] In *Vernon Fire and Casualty*

**1.** *General Grain* discusses the validity of exculpatory clauses as opposed to limitation of liability clauses. However, because the purpose of exculpatory clauses and limitation of liability clauses is the same, i. e., to protect a party from the common law liability for the party's own negligence, we hold willing assent is required by both types of clauses.

**2.** "The standard for determining ambiguity is whether reasonably intelligent men on reading the . . . contract would honestly differ as to its

meaning." *Huntington Mutual Insurance Co. v. Walker*, (1979) Ind.App., 392 N.E.2d 1182, 1185.

Indiana cases have not dealt directly with the issue of ambiguities in limitation of liability clauses, however, several cases have dealt with this issue in regard to indemnification clauses. Since indemnification clauses, like exculpatory clauses and limitation of liability clauses, are intended to protect a party from the conse-

*Insurance Company v. Graham,* (1975) 166 Ind.App. 509, 336 N.E.2d 829, the Indiana Court of Appeals set forth a requirement that an indemnification clause be "clear and unequivocal" before it will be enforced. *See also Indiana State Highway Commission v. Thomas,* (1976) 169 Ind.App. 13, 346 N.E.2d 252. Both *Vernon* and *Thomas* dealt with indemnification clauses which were ambiguous in that it was not clear that a party was to be indemnified for losses caused by the party's own negligence. The limitation of liability clause in this case is also ambiguous, but for a different reason. The clause reads: "Although film price does not include processing by Kodak, the return of any film or print to *us* for processing or any other purpose . . . ." (Emphasis added.) Since Carr received the receipt from Hoosier Photo and no mention was made of Kodak during the transaction, it is unclear to whom the pronoun "us" in the clause refers. As previously discussed, the use of the word "return" makes the clause (and thus the word "us") inapplicable to Hoosier. However, since the receipt was obtained from Hoosier, not from Kodak, there is no reason to assume "us" refers to Kodak.

We feel the requirement that limitation of liability clauses be unambiguous means not only that it must be clear that a party is protected in case of the party's own negligence, but also that it must be clear exactly which parties are protected. Since it is not clear whose liability is being limited by the clause on the film receipt, we find the clause fails to protect Kodak.

Because of the ambiguity of the limitation of liability clause on the film receipt and because the limitation of liability clause on the film box applies only to the sale of the film, we find neither clause protects Kodak. The trial court properly found Carr did not assent to the application of the clauses to Kodak because a careful reading of the clauses would not have informed Carr that they were meant to protect Ko-

dak and any assent would have been meaningless.

### III

The final issue is the amount of damages awarded to Carr by the trial court. Carr contends the award of $1013.60 plus interest and costs is contrary to law and against the weight of the evidence because the only evidence presented showed Carr suffered damages in the amount of $6,400. Hoosier Photo and Kodak argue Carr's damages should be limited to the cost of the film because: (1) limitation of liability clauses which would limit liability of Hoosier Photo and Kodak to the cost of the film were printed on the film package and on the receipt; (2) Hoosier Photo and Kodak did not agree to accept bailment of the unique photographic images contained on the film; and (3) Carr failed to show damages in excess of $13.60.

We find the trial court's determination of damages to be proper and affirm the award of $1013.60.

Although Carr has correctly stated the measure of damages for loss of or damage to personal property, he has overlooked the rule in Indiana which states that the computation of damages, if supported by the evidence in the record, is strictly a matter within the court's sound discretion. *Gene B. Glick Co. v. Marion Construction Corp.,* (1975) 165 Ind.App. 72, 331 N.E.2d 26; *Smith v. Glesing,* (1969) 145 Ind.App. 11, 248 N.E.2d 366. Even if the evidence is uncontroverted, the trial court may make a conscious choice to believe or disbelieve it. *Charlie Stuart Oldsmobile, Inc. v. Smith,* (1976) 171 Ind.App. 315, 357 N.E.2d 247, *modified,* Ind.App., 369 N.E.2d 947. Uncontroverted evidence will sometimes support conflicting inferences and in this case the inferences drawn by the trial court will prevail. *A.S.C. Corporation v. First National Bank of Elwood,* (1960) 241 Ind. 19, 167 N.E.2d 460; *Nationwide Mutual Insurance*

quences of the party's own negligence, we feel the reasoning in the indemnification cases is

applicable to the limitation of liability clause.

*Co. v. Day,* (1967) 140 Ind.App. 564, 224 N.E.2d 520; *Calvert v. London,* (1965) 137 Ind.App. 595, 210 N.E.2d 376.

In determining the amount of damages to be awarded to Carr, the trial court obviously did nothing more than exercise its discretion. Although Carr's evidence as to damages may not have been directly controverted, the court was justified in not awarding the full amount of damages sought by taking into consideration facts such as: the entire purpose of Carr's trip to Europe was not just to take photographs; he and his family received other benefits from the trip; and that five of the nine rolls of film were developed and returned to Carr.

In regard to Carr's contention that the trial court awarded damages which were contrary to the law and to the evidence, we find the trial court properly exercised its discretion in awarding damages of $1013.60.

We have already dealt with Hoosier Photo's and Kodak's contention that the limitation of liability clauses on the film packages and on the receipt limit Carr's damages to the cost of the film ($13.60). We find defendants' two remaining arguments as to the amount of Carr's damages to be unconvincing. Hoosier Photo's and Kodak's contention that Hoosier Photo could not have accepted the photographic images for bailment is not supported by the evidence. The Agreed Statement filed by the parties states that Carr informed Hoosier Photo of the nature of the film and where it had been exposed. Therefore, Hoosier Photo clearly had notice of the contents of the film. Even if this were not the case, both Hoosier Photo and Kodak must be aware that when film is given to them to be developed it has photographic images on it and that in almost every case these images will be more valuable than the unexposed film. This case is not one in which an unexpectedly valuable item is left inside a suitcase or a car trunk which is left with a bailee. By virtue of their years of experience in the field, Hoosier Photo and Kodak must surely be aware that film which is to be developed may be expected to have images on it.

The argument that Carr has failed to prove any damage in excess of $13.60 is also contrary to the evidence. The case cited by Hoosier Photo and Kodak to support their contention, *Rhodes v. Ritz Camera Centers,* (1959) D.C.Mun.Ct.App., 151 A.2d 262, deals with a case in which the plaintiff sought to recover damages for loss of film which he alleged was of value to him *in his business.* The court held that since the plaintiff had introduced evidence of the cost of round trip plane fare should he desire to take the pictures again, but no evidence of how his business was damaged or in what amount by the loss of the film, he was not entitled to recover more than the value of the film.

In the case at hand, Carr is not claiming any business losses as a result of the loss of the film. Carr is claiming personal loss to himself and his family and he has shown evidence of this loss as best he can—by introducing evidence of the amount necessary to allow him to retake the photographs. The evidence introduced by Carr is sufficient to support an award of damages in excess of $13.60.

We hold Carr has sustained his burden of proof as to the amount of damages suffered.

Affirmed.

RATLIFF, J. (sitting by designation), concurs.

SULLIVAN, J., filed separate opinion concurring in part, dissenting in part.

SULLIVAN, Judge, concurring in part and dissenting in part.

I concur in that portion of the majority opinion which affirms the judgment as to Hoosier Photo Supplies, Inc. I dissent, however, from the opinion insofar as it affirms the judgment against Eastman Kodak Company.

Without supportive rationale, the majority places a tortured construction upon the

language of the limitation clause contained on the film box. The limitation clearly extends beyond the initial sales transaction notwithstanding what the majority feels is covered by the sales price. The limitation applies not only to film which is defective when purchased by the consumer but also "if damaged or lost" by Kodak. Once film has come into the possession of a consumer it could not be damaged or lost by Kodak unless returned to the corporation for processing. Additionally the limitation provision specifically gives notice that "processing, or other handling" of the film might occur by Kodak or a subsidiary company. Therefore, I cannot agree that this limitation clause is inapplicable.

Although the receipt is clearly that of Hoosier Photo the specific use of the Kodak name is in direct and unmistakable conjunction with the processing operation. The receipt invalidates the majority's reliance upon price as an indication that liability for negligence in processing is not limited. To construe the word "us," as used in the receipt notice, to refer to someone other than Hoosier or Kodak is untenable. No other person or corporation is indicated on the receipt other than Hoosier or Kodak. If the film had been purchased from Hoosier it could have been returned to Hoosier thus making the limitation applicable. Furthermore, it makes little sense to emphasize that the purchase price of the film did not include processing by Kodak unless it is contemplated that Kodak might do the processing. In my view any reasonable person reading the receipt is placed on notice that the film may be processed by Kodak, and if so that Kodak's liability is limited.

While it may be more palatable to hold such limitation provisions contrary to public policy the current state of the law does not permit us to do so in this case. The record before us does not disclose that the contractual provisions here involved were unconscionably forced upon Mr. Carr. *Compare Weaver v. American Oil Co.* (1971) 257 Ind. 458, 276 N.E.2d 144.

I would reverse as to Kodak and affirm as to Hoosier.